In re Ford T. JOHNSON, Debtor.

Ford T. Johnson, Jr., Appellant,

v.

W. Clarkson McDow, Jr.,
et al., Appellees.

No. Civ.A. 98–1188.
Bankruptcy No. 97–1709.

United States District Court,
District of Columbia.

July 20, 1999.

Ernest P. Francis, Arlington, VA, for plaintiff.

Wilma A. Lewis, United States Attorney, Washington, DC, Daria J. Zane, Assistant U.S. Attorney, Washington, DC, for defendant.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

### I. Introduction

This Chapter 7 Bankruptcy matter comes before the court on Debtor Ford T. Johnson's appeal of an April 6, 1998 Order denying his Motion to Alter or Amend Order Denying Rule 9011 Sanctions ("Motion to Alter or Amend"). This is an appeal which now follows final judgment in a bankruptcy case, and this court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 158(a).

The question before this court on appeal is whether the Bankruptcy Court abused its discretion in denying Debtor's Motion to Alter or Amend. Because the evidence in the record shows that the Debtor's Motion for Sanctions was, on its face, plainly frivolous and counterproductive, the Bankruptcy Court did not abuse its discretion. Furthermore, the independent finding that this particular Motion to Alter or Amend is frivolous can only be bolstered by a review of the entire appeal record. The record of this case makes only too clear that Debtor's counsel was willing to spend his own resources as well as the Trustee's resources and the court's resources litigating the minutia of allegations that were, are, and will always be irrelevant.

### II. Background

#### A. *Debtor's First Motion for Sanctions*

Ford T. Johnson ("Debtor") filed a petition under Chapter 11 of the United States Bankruptcy Code on February 6, 1996. The petition was filed in the United States Bankruptcy Court for the District of Maryland. For months following the filing of the case, the debtor failed to file a proposed disclosure statement or plan. Due to the inactivity in the case, the attorney responsible for the case in the Office of the United States Trustee ("Trustee") sent a routine letter to the Debtor's counsel with a copy of the letter going to the Debtor. It is undisputed that the letter outlined the deficiency, requested a response, and detailed the possibility that the Trustee might file a Motion to Convert or Dismiss. Shortly thereafter, on June 24, 1996, the Trustee's office received a phone call from the Debtor in which the Debtor informed the Trustee that he was seeking new counsel. Granting the Debtor's request, the Trustee agreed to forebear filing a motion to convert or dismiss for two more weeks and asked the Debtor to have his new attorney, Ernest P. Francis, call the Trustee. It is undisputed that on July 10, 1996, Mr. Francis counsel for Debtor contacted the Trustee and said that he would call again on July 16, 1996, after he could review the file. Further, it is undisputed that counsel for the Debtor did not contact the Trustee on July 16th as Mr. Francis claimed he would do. Another six weeks passed. On August 30, 1996, the Trustee filed the United States Trustee's Motion to Convert or Dismiss ("Motion to Dismiss").

On September 11, 1996, Mr. Francis contacted the Trustee's office and threatened to petition the court for Rule 9011 sanctions if the Trustee did not withdraw his Motion to Dismiss. On that same day the Trustee responded with a letter that stated that these motions were of a routine nature and that, given the delay, creditors may be prejudiced. The Trustee in his September 11, 1996 letter mentioned that the matter could easily be handled by a

consent order in which a definite date could be set for the filing of the disclosure statement and plan.

The Debtor, and his counsel, elected not to cooperate in a consent order and instead opted to wage a "Titanic" litigation battle. The Debtor filed an opposition to the Trustee's Motion to Dismiss. After a hearing in which the court denied the Trustee's Motion to Dismiss conditioned on the Debtor filing a disclosure statement and plan within sixty days, the Debtor filed a motion to alter or amend the judgment on the grounds that the judgment violated due process. The court denied the Debtor's motion to alter or amend judgment. Following that, the Debtor filed a motion for sanctions, which was denied. The Debtor then appealed the denial of the motion for sanctions.

On appeal, the United States District Court for the District of Maryland stated that the appeal was clearly frivolous and that the Trustee was justified in filing a motion to dismiss or to convert after the Debtor's long delay. The transcript from the February 9, 1997 hearing scolds counsel for the Debtor. "This is an appeal which really flies in the face of both law and logic and facts, and I need to state that emphatically because I'm looking at this record, it (the appeal) has no justification. Had the trustee asked for sanctions in this case against the appellant, the Court would have seriously entertained imposing sanctions in this case."

### B. *Appellant's Motion Against U.S. Trustee Regarding Accusations on Possible Conflict of Interests.*

During the time period between the Trustee's Motion to Dismiss and the Debtor's Motion for Sanctions, the Debtor filed a Motion Against U.S. Trustee Regarding Accusations on Possible Conflicts of Interests. This new battle was created following a conversation which occurred after an October, 1996 hearing between the Trustee and Mr. Francis. During this conversation a member of the Trustee's office told Mr. Francis of public record documents filed in another bankruptcy case that could potentially show a conflict of interest on the part of Mr. Francis. Two months after the conversation in which the possibility of conflict of interest was brought to his attention, Mr. Francis filed a Motion Against U.S. Trustee Regarding Accusations on Possible Conflict of Interest. The Trustee filed an opposition. The motion was denied.

### C. *Present Motion for Sanctions Pursuant to Bankruptcy Rule 9011*

The 9011 sanction motion currently before the Court stems from the Trustee's objections to the Debtor's application for award of interim compensation filed June 9, 1997. *See* R. 4. On July 1, 1997, the Trustee objected to five parts of the application numbered here (1) through (5):

(1) Opposition to the Department of Justice Motion for Appointment of a trustee or Examiner in the Koba Associates Chapter 11 case; 21.4 hours

(2) Preparation of Disclosure Statement and Plan; 19.1 hours

(3) Responding to the Motion of the United States Trustee And other accusations by the Trustee; 22.8 hours

(4) Preparation of Rule 11 Motion against United States Trustee; 1.5 hours

(5) Opposition to the fee application of previous counsel; 31.4 hours.

The Trustee objected to part one on the grounds that the 21.4 hours were performed for a separate affiliate of the Debtor and provided "little, if any, apparent benefit to the estate of this Debtor-in-possession." The objection to part two was based on the lack of results of the 19.1 hours of time spent in preparation of the Disclosure statement and Plan. The Trustee stated that "[t]he disclosure statement prepared and filed by applicant on January 6, 1997 did not provide adequate information as required by the Bankruptcy Code" and that the Court had denied approval of the plan. The Trustee objected to part three on the basis that the services did not provide any benefit to the estate. The Trustee went further, stating that the September 11, 1996 letter made the expenditure of these services pointless as the letter "outlines the process normally followed in this District which minimizes expense to an estate while prodding the case to a resolution." The Trustee's objection to part four was based on the Trustee's belief that the first Rule 9011 motion prepared by the Debtor did nothing more than delay and add to the "burden of the Court's docket." Finally, the expenditure of 31.4 hours of time spent under part five on opposing the fee application did not benefit the estate and "such an effort for such a small sum is out of proportion in this case where the Debtor's principal asset is his residence which has been appraised at approximately $2,000,000.00." The Trustee calculated the actual fee savings as a result of the Debtor's opposition to only $1,065.30 after subtracting the time spent attempting to deny former counsel's fee applications.

The Debtor's response to the Trustee's objection, among other arguments supporting the fee application, raised issues pertaining to the Trustee's credibility and integrity. The following was used by the Bankruptcy Court in its decision denying Debtor's motion for sanctions:

The [Debtor's] response alleged that the United States Trustee's attorney is a "Liar and one who has blatantly discriminated against this Debtor" (p. 1); that he "lied to Debtor's Counsel in July 1996" (p. 1); that he "told a bold-faced lie to this Court on at least one previous occasion" (p. 1); that he was using the objection to fees "as a soapbox to defend himself and his fellow miscreants at the Department of Justice from Debtor's allegations of misconduct on their part" (p. 5); that he "conveniently overlooks his own conflicts of interests in objecting to the current fee application" (p. 2); that the objection reflects "the unholy alliance between the [United States] Trustee and Mr. Grossman; the [United States] Trustee overlooked Mr. Grossman's unethical behavior behavior because Mr. Grossman was attacking Debtor and his counsel" (p. 3); that "the only inadequate disclosure that has occurred in this case is that of which the [United States] Trustee is guilty" (pp. 3–4); and that "the failure of a liar to cite pertinent authority is entirely consonant" with his failure to cite Fourth Circuit decisions governing employment of professionals (p. 4 n. 2).

R. 18. On August 13, 1997 the Trustee filed a four page motion to strike the Debtor's response. In the motion to strike the Trustee explained:

In the instant case, Debtor's counsel has abandoned civil written discourse and argument. Instead, he has filed a lengthy diatribe designed to impugn unfairly his opposing counsel. There is no legitimate purpose served by counsel's name-calling except to demean the legal process and the litigants. The objectionable language used by Debtor's counsel is wholly irrelevant and impertinent to the fee issues to be resolved by this court. The response is so replete with unprofessional misrepresentations and imprudent verbiage that the entire pleading should be stricken from the record . . .

R. 8. The Trustee then asked for relief pursuant to the Bankruptcy Court's power under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Trustee also cited Federal Rule Civil Procedure 12(f) and the inherent powers of all courts to "regulate the practice of lawyers," as well as *Hauswald Bakery v. Pantry Pride Enterprises, Inc.*, 78 Md.App. 495, 553 A.2d 1308 (1989). The Trustee quoted *Hauswald* in complaining that "[i]f the practice of law is to retain any vestige of its traditional and vaunted position as a 'learned profession,' some measure of civility among its practitioners will have to be observed, even in the heat of battle." Mot. to Strike at 2 (quoting 78 Md.App. 495, 507 n. 3, 553 A.2d 1308). The Trustee suggested that Debtor be given time to file a response lacking the ad hominem attacks. Relying on Local Bankruptcy Rule 9013–2, the Trustee did not file a memorandum in support of his motion to strike.

On September 8, 1997, the Bankruptcy Court ruled on the Debtor's fee application, the Trustee's objection, and Debtor's response. The Bankruptcy Court did not allow interim compensation in full for those activities found not to benefit the estate. The Bankruptcy Court agreed fully with the Trustee's objection on three of the five areas for which the Trustee sought to deny the Debtor's counsel fees. Those areas are defined below in an excerpt from that decision:

Those activities fall into three categories: (1) The work done in opposing the United States Trustee's Motion to Dismiss or Convert was excessive and denoted a lack of experience before this court which the estate should not bear the burden. (2) The plan and disclosure statement filed by counsel on January 6, 1997, produced no results. (3) The fees sought from this estate in conjunction with the filing of an opposition to a motion to appoint a trustee filed by the Department of Justice in the case of Koba Associates, 98–00189, originally filed under Chapter 11 in the District of Columbia now in Chapter 7 were not shown to have benefitted this estate.

R. 12. The decision went further in its criticism of the Debtor's counsel. The court repeated the concerns raised by the Trustee in his objection to the fee application concerning Mr. Francis representing both Koba Associates, Inc. and the Debtor:

Counsel's application for employment was filed with the court on July 5, 1996, and approved on August 22, 1996. At that time, counsel also served as general counsel for Koba Associates, Inc. ("Koba Associates"), a corporation whose shares were held solely by the Debtor. Debtor's amended schedules dated October 15, 1996 show a disputed, unsecured claim of Koba Associates in the amount of $758,028.00. Koba Associates is also a Debtor in bankruptcy in the District of Columbia, Case No. 96–00189. Had the court focused on the fact that counsel was acting as counsel of Koba Associates, it would not have approved counsel's application for employment. Counsel held an adverse interest to the estate by his representation of Koba Associates. However the court will not punish counsel for its oversight. Dual representation does lead to a closer scrutiny of counsel's services.

R. 12. The Bankruptcy Court did not approve compensation to the Debtor's counsel for the 22.8 hours of work performed in opposing the Trustee's Motion to Dismiss or Convert, or for the work performed on the Preparation of Disclosure Statement and Plan. The Bankruptcy Court also agreed with the Trustee's objection that the 24.1 hours spent opposing a Motion for the Appointment of a Trustee in the case of Koba Associates, Inc., case No. 96–00189, did not benefit the estate. The court found that the Debtor's counsel had not "sustained his burden of demonstrating sufficient benefit to the estate to justify the allowance of all that he seeks." R. 12–8. The Court awarded

Debtor's counsel $8,500.00 of the $14,141.70 application on September 8, 1997.

On November 18, 1997, three months after the Trustee's motion to strike, the Debtor's second Motion for Sanctions Under Bankruptcy Rule 9011 Against the United States Trustee was filed. The Debtor's motion called for sanctions on three grounds: first, the Debtor claims that the Trustee failed to cite controlling legal provisions and disregarded case law; second, that the Trustee's motion contained unsubstantiated allegations and had no basis in fact; and third, that the Trustee's purpose was to censor free speech and deny counsel compensation for work performed. Counsel for the Debtor railed against the alleged unjust actions of the Department of Justice. In reference to the Trustee, Mr. Francis stated, "Whether individuals whose mindset manifestly reeks of the values of the totalitarian societies that have plagued this planet throughout this century can ever be compelled to respect the rights that others have to free expression is questionable...." The Bankruptcy Court ruled on March 4, 1998 that the motion to strike was moot. The Bankruptcy Court also ruled that the Debtor's second motion for sanctions was denied.

The decision that accompanied the March 4th order detailed the court's view that the Trustee was fully justified in moving to strike the response that was "replete with ad hominem attacks against a United States Trustee legal representative in this case." The court found the allegations concerning the credibility of the Trustee were simply not relevant to the objections that the Trustee had raised to the Debtor's fee application. In the court's opinion, the objection did not raise any facts that were exclusively within the knowledge of the United States Trustee, so the ad hominem attacks on the Trustee's credibility were not germane to the resolution of the objection. The court ruled that the motion's reliance on 11 U.S.C. § 105 and Federal Rule of Civil Procedure 12(f) was not grounds for sanctions and that the motion did not violate the First Amendment protection afforded to the Debtor and his counsel. Further, the court stated that the motion to strike was supported by the facts (the allegations and "name-calling" contained in the Debtor's response). Finally, the court ruled that the Debtor's response "used unnecessary personal attacks that cried out for a motion to strike," thereby making the Debtor's arguments as to the purpose of the motion to strike meaningless.

Following that decision, the Debtor filed a Motion to Alter or Amend Order Denying Rule 9011 Sanctions on March 13, 1998. The Trustee filed an opposition and the Debtor filed a reply. On April 6, 1998, in a one-page opinion, the Bankruptcy Court denied the Debtor's motion to alter or amend the order. The court stated:

> It is beside the point whether Rule 12(f) or 11 U.S.C. § 105 could not be used to strike the Debtor's paper (the Debtor's response to the United States Trustee's objection to the Debtor's counsel's fee application). The court is satisfied that there was a good faith arguable position for invoking these provisions. Similarly, it is irrelevant whether the matters the United States Trustee sought to strike were indeed irrelevant. The question is not whether the Debtor's arguments were in fact irrelevant such that they should be stricken. The question is whether the United States Trustee had some basis under the standards of Rule 9011 for contending that they were irrelevant, even if arguably wrong on the merits of the contention. As the court's prior decision makes clear, the United States Trustee was well justified under the standards of Rule 9011 in making the contention of irrelevance.

Following the denial of the motion to alter or amend, the Debtor filed the appeal now before this court. The bankruptcy case has now concluded, and this appeal is ripe for decision.

## III. Analysis

### A. Standard of Review for Appeal of Bankruptcy Court's Order

■ Appellee moves this court on appeal to reverse the Bankruptcy Court's ruling and impose sanctions on the United States Trustee's office pursuant to 28 U.S.C. § 158(a). On appeal from a Bankruptcy Court, a district court "may affirm, modify, or reverse a Bankruptcy Court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013 (This mirrors the deference defined under Federal Rule of Civil Procedure 52(a)). See also In re Tolona Pizza Products Corp., 3 F.3d 1029, 1033 (7th Cir.1993). The standard of review concerning a Bankruptcy Court's denial of sanctions is abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The question of whether a Bankruptcy Court abused its discretion can only be answered in the affirmative if the Bankruptcy Court "based its ruling on an erroneous view of the law or a clearly erroneous assessment of the facts." Id.

■ The burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding. That party must show that the court's holding was clearly erroneous as to the assessment of the facts or erroneous in its interpretation of the law and not simply that another conclusion could have been reached. See Anderson v. Bessemer City, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); In re Rimsat, Ltd. v. Hilliard, Jr., 207 B.R. 964, 969 (D.D.C.1997); In re Windor Industries, Inc., 459 F.Supp. 270 (N.D.Tex.1978). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). "To be clearly erroneous, a decision must . . . strike us as wrong with the force of a five week old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988). In Anderson v. Bessemer City, the Supreme Court said, "If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." 470 U.S. 564 at 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Questions concerning the application of the controlling law are reviewed de novo on appeal unlike factual findings which, as stated above, are reviewed on the clearly erroneous standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); McGahren v. Heck (In re Weiss), 111 F.3d 1159, 1166 (4th Cir.1997); Caswell v. Lang, 757 F.2d 608, 609 (4th Cir.1985); Willemain v. Kivitz, 764 F.2d 1019, 1022 (4th Cir.1985).

### B. Debtor's Arguments

The Debtor has brought four arguments before this court on appeal. First, the Debtor argues that the Bankruptcy Court erred in finding that the Debtor had made a misrepresentation because the Trustee considered his arguments to be irrelevant. Second, the Debtor argues that the Bankruptcy Court erred in holding that the Trustee had legal support for his position because of his good faith belief that what he cited made relief available and that the motion to strike violated his First Amendment rights. Third, the Debtor argues that the Bankruptcy Court erred because it ignored the evidence of improper pur-

poses of the Trustee in filing the motion to strike. Finally, counsel for the Debtor argues that "Debtor had no notice of the Trustee's 'rules' of professionalism and civility." This court shall now address each of these arguments in turn.

1.

First, this Court will examine the legal standard on which the Bankruptcy Court should have relied in its weighing of the Debtor's motion for sanctions. Authorities interpreting Federal Rule of Civil Procedure 11 are applicable to Bankruptcy Rule 9011. *See Grunewaldt v. Mutual Life Ins. Co. (In re Coones Ranch, Inc.)*, 7 F.3d 740, 742 n. 4 (8th Cir.1993). In determining whether Rule 9011 has been violated the court must apply the "reasonableness under the circumstances" standard. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 534, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *Ridder v. City of Springfield*, 109 F.3d 288, 297–299 (6th Cir.1997). The question before the Bankruptcy Court was whether "a reasonable attorney in like circumstances would believe his actions to be factually and legally justified." *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F.2d 953, 956 (4th Cir.1990) (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987)). The standard is an objective one that is examined the instant that the attorney signs the document. *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 (4th Cir.1991) (quoting *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 872–875 (5th Cir.1988)). To determine whether sanctions should be imposed, the court considers (1) whether the attorney made a reasonable inquiry and could form a reasonable belief that the pleading is well grounded in fact; (2) whether the attorney made a reasonable inquiry and could form a reasonable belief that the pleading is warranted by existing

law; or (3) whether or not the pleading was made for an improper purpose such as to harass or delay. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1173–1174 (D.C.Cir.1985); *Cousin v. District of Columbia*, 142 F.R.D. 574, 577 (D.D.C. 1992).

Counsel for the Debtor focuses his first argument on the fact that the Trustee's motion to strike stated that the Debtor's response is "so replete with unprofessional misrepresentations and imprudent verbiage that the entire pleading should be stricken from the record." Counsel for the Debtor states that the Trustee violated Rule 9011's requirement of stating with particularity the grounds on which the motion to strike was based. The Debtor argues that the Trustee did not provide one example of a misrepresentation that could be found in the Debtor's response. But it is without doubt that the Trustee correctly stated that the motion is "replete with unprofessional misrepresentations." In the response, counsel for the Debtor called the Trustee a liar five times, among other insults made toward the Trustee's character. This court finds that there was simply no need for the Trustee to point out each ad hominem attack and belabor the obvious.[1] The "unprofessional misrepresentations" are blatantly obvious to any person who reads the Debtor's response. Because counsel for the debtor's accusatory venom infected the entire pleading, simply referring to the document specifies the misrepresentations under Rule 9011. In fact, this court finds that the factual basis for the motion to strike was all too clear. The Trustee in moving to strike was only objecting to the gratuitous insults used by counsel for the Debtor. One may have an easier task to argue that the earth is flat than to argue the Trustee had no factual basis for the motion to strike.

1. In the motion to strike, the Trustee did point out that he had been described by counsel for the Debtor as a "liar" in Debtor's response. The Trustee's motion to strike was only directed at the ad hominem attacks. The Trustee stated that "it may be advisable to grant additional time to permit counsel to file an appropriate response to the United States Trustee's fee objection."

The court also agrees with the Bankruptcy Court in its determination that the Debtor made unprofessional misrepresentations in stressing the importance of the Trustee's credibility. The ad hominem attacks made in the Debtor's response did not address the validity of any argument put forward by the Trustee in his objections to the Debtor's fee application. The Bankruptcy Court found that "the objection did not raise any facts that were exclusively within the knowledge of the United States Trustee. Instead, the objection relied upon matters of public record in the bankruptcy case and the related case of *In re Koba Associates, Inc.*, Case No. 96–00139 in this court. These were all facts that depended in no way on the credibility of the United States Trustee for proof." R. 18–1. After a review of the entire record, this court completely agrees with the Bankruptcy Court's aforementioned view of the facts.

*Black's Law Dictionary* defines misrepresentation as: "Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation. That which, if accepted, leads the mind to a apprehension of a condition other and different from that which exists. *Colloquially it is understood to mean a statement made to deceive or mislead.*" *Black's Law Dictionary* 903 (6th ed.1990) (emphasis added). The assertion of the Trustee being a "liar," as made repeatedly in the Debtor's response and as it was irrelevant, could only mislead the court in its analysis of the Trustee's objections to the Debtor's fee application. *See Analytical Sys., Inc. v. ITT Commercial Fin.*, 696 F.Supp. 1469, 1471 (N.D.Ga.1986). By repeatedly accusing the Trustee of being a "liar," when his credibility was clearly not relevant to the determination of the fee application, Mr. Francis unprofessionally misrepresented the importance of the Trustee's credibility.

This court agrees with the Bankruptcy Court that, by making such ad hominem attacks when they served no relevant purpose, the Debtor opened the door for the Trustee to move to strike the accusations. The motion to strike was firmly planted on the ground that such accusations constituted an unprofessional misrepresentation as to their importance in the determination of Trustee's objections raised to the Debtor's fee application. It is beyond doubt that the Trustee had a factual basis for his motion to strike the irrelevant, scandalous, and impertinent attacks from the response. The Trustee's inquiry into the facts was clearly reasonable before he filed the motion to strike.

2.

The Debtor's second argument on appeal is that the Bankruptcy Court erred in holding that the Trustee had legal support for his position because of his good faith belief in those citations. Once again, counsel for the Debtor tries to narrowly focus the issue on whether or not the Trustee can move to strike a scandalous matter under 11 U.S.C. § 105 and Federal Rule of Civil Procedure 12(f). This is clearly an artificial view of the Trustee's motion to strike. It is true that the Trustee based his motion to strike on 11 U.S.C. § 105 and cited Rule 12(f) as an analogy that the court could examine. However, the Trustee invoked those provisions because there "is no legitimate purpose served by Counsel's name-calling except to demean the legal process and the litigants. The objectionable language used by Debtor's counsel is *wholly irrelevant and impertinent to the fee issues to be resolved by this court.*" R. 8–3 (emphasis added). The Trustee's main reason for moving to strike the language contained in Debtor's response is that it is "wholly irrelevant" and had "no legitimate purpose." The Trustee's reason for asking the court to strike was that the accusations were irrelevant, as well as scandalous and unprofessional. The Bankruptcy Court agreed with that assessment, and this court does as well. There is absolutely no

clear error in the Bankruptcy Court's interpretation of the reasons for which the Trustee filed the motion to strike, as they are plain on the face of the motion.

 It is true that counsel may only bring a Rule 12(f) motion to strike "pleadings," and the Debtor's response is not a pleading. The Debtor's application for fees, the Trustee's objection, and the Debtor's response are not pleadings in an adversary proceeding. It is also true that Bankruptcy Rule 9014 expressly excludes all but a specific few of the Federal Rules of Civil Procedure. Rule 12(f) is not one of the Rules included in contested matters under Rule 9014. Contested matters are defined under Bankruptcy Rule 9014, and objections to attorney fees fall within this category. *See In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557 (Bankr.D.Utah 1985); 10 *Collier on Bankruptcy* § 9014.01 (Lawrence P. King, ed. 15th ed., 1998). The fee application of the Debtor's counsel cannot be an adversary proceeding, as it is not so defined under Bankruptcy Rule 7001. Counsel for the Debtor makes a powerful argument against invoking Rule 12(f) for the purpose of striking the Debtor's response, but this is not why the Trustee invoked Rule 12(f).

 The Trustee used Rule 12(f) only to reinforce his argument for the use of the Bankruptcy Court's inherent powers under Section 105 to strike irrelevant matters. The Trustee mentioned Rule 12(f) as an example of the court's ability to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This argument is persuasive. "Rule 12(f) was substantially derived from former equity Rule 21 and reflects an inherent power of the court to reduce pleadings, to expedite the administration of justice and to prevent abuse of its process." *Manville Sales Corporation v. Paramount Systems, Inc.,* 1988 WL 54060 (E.D.Pa.1988). In the first paragraph of the motion to strike, the Trustee stated, "the applicable statute supporting this motion is 11 U.S.C. § 105." The Trustee further stated:

> Under 11 U.S.C. § 105(a), Bankruptcy Courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Together with the "inherent powers of all courts," a Bankruptcy Court may rely upon section 105(a), inter alia, to regulate the practice of lawyers.

Mr. Francis wants to focus on the inapplicability of Rule 12(f) and Section 105 as to matters which a party may find scandalous or defamatory. Clearly, when operating under the Bankruptcy Rules, Rule 9018 in the general provisions chapter applies to a "Scandalous or Defamatory Matter." Neither 11 U.S.C. § 107 nor Bankruptcy Rule 9018 address striking material found to be irrelevant. The Trustee grounds his arguments on the inherent power of the courts to strike irrelevant arguments and to regulate the practice of attorneys. Section 105(a) provides the statutory basis for Bankruptcy Courts to exercise this inherent power.

 Section 105 specifically codifies what are traditionally called "inherent powers" to give the Bankruptcy Courts the necessary ability to manage the cases on their docket. It is imperative that courts have the necessary authority to manage the arguments and conduct of parties to ensure judicial efficiency and to do justice. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 767 n. 14, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). These powers are "necessary to the exercise of all others." *Id.* (quoting *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). Inherent powers take into account the fact that legislatures cannot foresee the infinite circumstances of life and all the necessary orders that courts may have to issue to do justice. *See In re MPW Stone,* 986 F.2d 898, 901–903 (5th Cir.1993). If a court has no way of adequately carrying out its duties without the use of some special device, a court has the inherent power to employ that special device. *See Id.* at 902

(quoting *Ex parte Peterson*, 253 U.S. 300, 312, 40 S.Ct. 543, 64 L.Ed. 919 (1920)).

In order to insure judicial efficiency, courts must have the power to sanction litigants by striking irrelevant accusations which by their absence cannot prejudice any party. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 32, 43–44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *In Re Weiss*, 111 F.3d 1159, 1171 (4th Cir.1997). "By providing that Bankruptcy Courts could issue orders necessary to prevent an 'abuse of the judicial process,' Congress impliedly recognized that Bankruptcy Courts have the inherent power to sanction that *Chambers* recognized exists within Article III courts." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996). The Tenth Circuit has ruled that "Section 105 intended to imbue the Bankruptcy Courts with the inherent power recognized by the Supreme Court in *Chambers.*" *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir.1994). It is clear from the wording of Section 105 that Congress intended Bankruptcy Courts to have power to strike irrelevant arguments that only act as obstacles to determining a case on the merits. The Trustee claimed that the accusations put forth by counsel for the Debtor were irrelevant. This court finds that these accusations have only acted to waste precious judicial resources without any justification whatsoever for their use.

A court may limit itself to hearing only relevant arguments without violating the First Amendment. If a litigant feels that the scope of their arguments has been unfairly limited and that their rights protected by the Constitution of the United States have been violated, then that litigant may appeal. "*Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), and *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), the two leading Supreme Court cases in this area, essentially hold that in court, an attorney's objection to an adverse ruling is his First Amendment remedy." *Zal v. Steppe*, 968 F.2d 924, 931 (9th Cir.1992). The Trustee's motion to strike irrelevant arguments was reasonable under the circumstances, and, as this ensuing litigation so clearly demonstrates, the appeal process allows vindication of any substantive rights that may have been violated. Even if the court had approved the Trustee's motion, this court finds that counsel for the Debtor would have suffered no detriment to his ability to effectively pursue the interests of his client if the irrelevant ad hominem attacks had been stricken. The Trustee's motion to strike under the Bankruptcy Court's inherent powers and Section 105 was without any doubt reasonable under the law.

3.

Mr. Francis next argues that the Bankruptcy Court erred in ignoring the improper purposes for which the Trustee filed his motion to strike. Mr. Francis states: "[I]n finding that the Trustee acted with a proper purpose, the court simply ignored the pervasive indicia of the Trustee's improper purpose(s)." Counsel for the Debtor contends that the frivolity of the Trustee's motion to strike is "highly probative of an improper purpose." As this court has stated hereinbefore, the Trustee's motion to strike was not frivolous as it contained clear factual and legal backing.

This court finds that there is no clear error present in the factual determination of the Bankruptcy Court that Debtor's response "cried out for a motion to strike." Furthermore, this court also affirms the Bankruptcy Court's finding "[t]hat the Debtor's chapter 11 case had a series of contests between the Debtor and the United States Trustee cannot obliterate the proper purpose the motion served of seeking to restrict the fee application arguments to germane matters devoid of unnecessary personal attacks." R. 18–6. The lengthy arguments concerning: (1) the alleged discrimination of the Trustee

stemming from the alleged double standard employed between counsel for the Debtor's fee application and another counsel's fee application; (2) the alleged attempts of the Trustee to impose financial injury on counsel for the Debtor; (3) the alleged attempts of the Trustee to deny the Debtor counsel; and (4) the alleged attempts of the Trustee to waste counsel for the Debtor's time, have little to do with whether or not the Trustee had a reasonable basis to move to strike irrelevant ad hominem attacks. Mr. Francis's bald allegations and inferences of the Trustee's misconduct are unsupported by any reasonable interpretation of the record. This court finds no convincing evidence cited by counsel for the Debtor that would necessarily lead the Bankruptcy Court to find Debtor's ad hominem attacks were anything but completely irrelevant in the determination of the Trustee's objection to the fee application. No clear error in that factual determination by the Bankruptcy Court exists. In fact, this court finds that the allegations of the Trustee being a "liar" are so devoid of the necessary evidence to sustain them that they amount to little more than name-calling.

In examining the record in light of counsel for the Debtor's allegations, this court has looked for any substantial evidence to back up counsel for the Debtor's use of the word "liar" in describing the Trustee or any other misconduct on the part of the Trustee. Besides counsel for the Debtor's allegations, only one verifiable instance has been cited where the Trustee has ever incorrectly stated anything. During a November 6, 1996 hearing before the Maryland Bankruptcy Court, the Trustee stated that the Debtor had not filed fees on time. This statement turned out to be incorrect. The Trustee has stated repeatedly that the statement was incorrect and that it was made inadvertently. The February 9, 1998 transcript shows that counsel for the Debtor did not dispute the fact that Judge Mannes did not find the Trustee's incorrect statement was either purposeful or willful.

4.

■ The final argument brought before this court on appeal is that Mr. Francis was given no notice of the "self serving definition of professionalism" and the "Trustee's rules of civility." This argument is totally without merit. The Trustee moved to strike what were irrelevant and highly insulting references to himself being a "liar." Regardless of the need for civility and decorum in judicial proceedings, this court holds that the Bankruptcy Court has the power to strike irrelevant and impertinent arguments. The Trustee's motion to strike was based on that power, not on any newly fashioned rule of civility in the courtroom.

Unfortunately, counsel for the Debtor resorted to an unprofessional diatribe in order to cast doubt on the credibility of the Trustee. With no evidence to back up such serious allegations made toward another member of the bar, counsel for the Debtor has seriously impugned his own credibility. When making such scandalous and highly insulting allegations, counsel should be aware that, without credible evidence, the allegations seem childish at best. At worst these allegations strain the court's patience, waste the court's resources and smack of the improper purposes that both Rule 9011 and Rule 11 are supposed to prevent. Instead, and completely contradictory to its purpose, Rule 9011 has been used by counsel for the Debtor to create more satellite issues that have little to do with the underlying Chapter Seven bankruptcy case and that are far removed from his client's best interests.

■ Abuse of the judicial process should not be tolerated. The abuse in this case was not by the Trustee, but by counsel for the Debtor. Where a motion is filed by a litigant substantially motivated by "vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *In re Itel Securities Litig.*, 791 F.2d 672, 675 (9th Cir.1986) (quoting *Lipsig v. National*

*Student Marketing Corp.,* 663 F.2d 178, 182 (D.C.Cir.1980)). "The power of the federal courts to sanction attorney misconduct, be it frivolous litigation or contemptuous behavior, is beyond doubt." *Id.* at 676. Federal courts have the inherent power to punish abuse of the judicial process. *See Chambers,* 501 U.S. 32, 44–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Pursuant to 28 U.S.C. § 1927, an attorney may be responsible directly for the costs of the opposing party. In this case, this court will entertain any application for fees that the Trustee chooses to file for having to defend this frivolous appeal.